```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/3/21
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Quaysean Cannonier,

                    Petitioner,

–v–

United States of America.

15-cr-95 (AJN)
18-cv-8764 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

      Quaysean Cannonier brings this petition under 28 U.S.C. § 2255 to vacate the judgment in this and set aside or correct his sentence. For the reasons stated below, the Court denies the petition.

### I. BACKGROUND

      The underlying facts of this case are not in dispute. Cannonier was charged in Counts One and Four of the S2 Superseding Indictment, which was unsealed on April 27, 2016. *See* Dkt. Nos. 29, 97 ("Indictment").[1] Count One charged Cannonier with participating in a racketeering conspiracy, in violation of Title 18, United States Code Section 1962(d), while Count Four charged him with using a firearm in furtherance of the racketeering conspiracy charged in Count One, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii). *See* Indictment ¶¶ 1–11, 18. Kerry A. Lawrence and Clinton W. Calhoun served as CJA counsel for Cannonier until April 5, 2017, when the Court held a conference and relieved them of their representation and allowed the substitution of Camille Abate as CJA counsel for Cannonier. *See* Dkt. No. 1207; *see also* Dkt. Nos. 1103, 1121.

---

[1] Unless otherwise noted, all citations to the docket correspond to the criminal docket, Case. No. 15-cr-95.

On August 17, 2017, Cannonier pled guilty before Magistrate Judge Barbara C. Moses to Count One of the Indictment. *See* Dkt. Nos. 1625, 1655. This Court accepted Cannonier's guilty plea after reviewing the transcript of the allocution and determining that Cannonier knowingly and voluntarily entered the guilty plea and that there was a factual basis for the guilty plea. *See* Dkt. No. 1637. As part of Cannonier's plea agreement, the parties stipulated to an applicable Sentencing Guidelines range of 63 to 78 months' imprisonment. *See* Dkt. No. 2550, Ex. 4 ("Plea Agmt.") at 4; *see also* Pre-Sentence Report ("PSR") ¶ 105. Also as part of the plea agreement, the Government agreed to dismiss Count Four of the Indictment. *See* Plea Agmt. at 1. In entering into the plea agreement, Cannonier agreed to waive his right to file a direct appeal or to bring a collateral challenge, including under 28 U.S.C. § 2255, of any sentence within or below the Stipulated Guidelines Range of 63 to 78 months' imprisonment. *See* Plea Agmt. at 5. The plea agreement clarified, however, that the waiver did not extend to "whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise," noting instead that "it is expressly agreed that the defendant reserves those rights." Plea Agmt. at 5. At his August 17, 2017 felony plea allocution, Mr. Cannonier confirmed that he understood that he was waiving his right to appeal or collaterally attack any sentence that was shorter than 78 months. *See* Dkt. No. 1655, Aug. 17, 2017 Tr., at 14:20–15:2.

On January 18, 2018, the Court sentenced Cannonier to 60 months' imprisonment, to be followed by three years' supervised release. *See* Dkt. No. 2048 ("Judgment") at 1–3.

On September 21, 2018, Cannonier filed his *pro se* 18 U.S.C. § 2255 petition. Dkt. No. 2373 ("Pet."). Cannonier based his petition on three claims of ineffective assistance of counsel. Specifically, he claimed that his attorney (1) failed to argue that his 2011 robbery conviction

should not count towards his criminal history under the Sentencing Guidelines; (2) failed to argue for a downward departure under the Guidelines on the basis that Cannonier suffered from attention deficit/hyperactive disorder ("ADHD"); and (3) that his attorney failed to seek a mental competency examination for the defendant. *See* Pet. at 11.

The Court ordered the Government to respond. Dkt. No. 2374. Due to the nature of Cannonier's ineffective assistance of counsel claims, the Government requested an order allowing Cannonier's prior counsel to submit a statement responding to his allegations of ineffective assistance. *See* Dkt. No. 2457; *see also* Rule 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts. The Court granted the Government's request on November 27, 2018, Dkt. No. 2463, and Cannonier returned the executed Attorney-Client Privilege Waiver on December 11, 2018, *see* Dkt. No. 2479. Ms. Abate filed a statement responding to Cannonier's ineffective assistance of counsel claims on April 9, 2019. Dkt. No. 2550 ("Abate Resp."). The Government then filed its response to Cannonier's petition on April 23, 2019. Dkt. No. 2558 ("Gov. Resp.").

## II. DISCUSSION

Section 2255 permits a prisoner in federal custody to challenge his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A § 2255 motion ordinarily requires a hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *see also Machibroda v. United States*, 368 U.S. 487, 494 (1962); *Pham v. United States,* 317 F.3d 178, 184–85 (2d Cir. 2003). A hearing is warranted if the motion sets forth "specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the defendant] to relief." *Gonzales v. United*

3

*States*, 722 F.3d 118, 131 (2d Cir. 2013). By contrast, a hearing is not necessary "where the allegations are vague, conclusory, or palpably incredible." *Id.* at 130–31 (internal quotation marks and citation omitted). Furthermore, because the petitioner is proceeding *pro se*, his submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted); *see also Thompson v. United States*, No. 16-CV-3468 (AJN), 2018 WL 327249, at *3 (S.D.N.Y. Jan. 3, 2018).

    A.    **Waiver of Rights**

As already noted, Cannonier waived his right to file a direct appeal or to bring a collateral challenge, including under 28 U.S.C. § 2255, of any sentence within or below the Stipulated Guidelines Range of 63 to 78 months' imprisonment. *See* Plea Agmt. at 5. Because that waiver covers all of Cannonier's arguments, the petition is denied.

In his felony plea allocution, Cannonier confirmed that he understood that the plea agreement would limit his right to appeal, and that "as long as the district judge sentences you to a prison term of no longer than 78 months, any lawful sentence of supervised release, any fine no greater than $250,000, [he was] giving up your right to challenge your sentence, whether by direct appeal, writ of habeas corpus, or otherwise." *See* Dkt. No. 1655, Aug. 17, 2017 Tr., at 14:20–15:2. This Court accepted Cannonier's guilty plea after reviewing the transcript of the allocution and determining that Cannonier knowingly and voluntarily entered the guilty plea and that there was a factual basis for the guilty plea. *See* Dkt. No. 1637. Moreover, in her affidavit, Cannonier's counsel contends that she reviewed the plea agreement with Cannonier carefully and more than once. *See* Abate Resp. ¶¶ 15–16. Cannonier's § 2255 petition does not claim that he

lacked an understanding of this waiver when he entered into the plea agreement or that he did not enter into the agreement voluntarily, and that issue is not presented to the Court.

"The Second Circuit has repeatedly—and emphatically—held that a defendant's knowing and voluntary waiver of the right to appeal [or collaterally attack] a sentence is generally valid and enforceable." *Fernandez v. United States*, No. 12-CR-445 (JMF), 2016 WL 4735370, at *3 (S.D.N.Y. Sept. 12, 2016) (collecting cases) (alteration in original). Thus, "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement," because "[s]uch a remedy would render the plea bargaining process and the resulting agreement meaningless." *United States v. Salcido-Contreras,* 990 F.2d 51, 53 (2d Cir. 1993); *see also United States v. Djelevic,* 161 F.3d 104, 106–07 (2d Cir. 1998) (holding that a knowing and voluntary waiver of right to appeal sentence within agreed upon guideline range is enforceable). Only "when the claim relates to the negotiation and entry of a plea or sentencing agreement" may "[c]laims of ineffective assistance of counsel . . . survive § 2255 waivers." *United States v. Cano*, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (Chin, J.). But "[i]f the constitutionality of [the plea agreement] process passes muster, the plea agreement's waiver would bar any consideration by the appellate court of issues that fall within the scope of that waiver." *United States v. Hernandez*, 242 F.3d 110, 114 (2d Cir. 2001).

Crucially, the Second Circuit has admonished that efforts to "dress up" claims challenging the correctness of a sentence as "violation[s] of the Sixth Amendment" are impermissible to the extent that they seek to circumvent the plain language of waiver provisions. *See United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998). When confronted with a Sixth Amendment claim after a criminal defendant has pleaded guilty and waived his right to appeal or

5

collaterally attack his sentence, therefore, a court must not go merely by the invocation of the Sixth Amendment and must instead assess whether an ineffective assistance of counsel claim is being used to advance otherwise-barred challenges to the sentence at issue. *See id.* ("If we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless.").

The Court concludes that Cannonier waived the claims he advances in his § 2255 motion. *See* Plea Agmt. at 5. As an initial matter, the Petition raises a number of claims regarding alleged errors that the Court committed in calculating and imposing Cannonier's sentence. He argues that the Court's assessment of the applicable criminal history points was in error and that the Court should have, but did not, depart from the applicable Guidelines range due to his attention deficit/hyperactive disorder. *See* Pet. at 3–4. Such collateral attacks are plainly foreclosed by the plain language of the waiver provision of the plea agreement, into which Cannonier knowingly and voluntarily entered. Plea Agmt. at 5; *see also* Dkt. Nos. 1625; 1655, Aug. 17, 2017 Tr., at 14:20–15:2. The very terms of the agreement provided that the waiver would be valid "even if the Court employ[ed] a Guidelines analysis different from that stipulated to." Plea Agmt. at 5. And Cannonier admitted when he pleaded guilty that he understood the terms and consequences of his waiver. In his Petition, Cannonier does not address his waiver of these rights—let alone attempt to justify why the Court should set aside his knowing and voluntary waiver of those rights. And because such waivers are "generally valid and enforceable," *see Fernandez*, 2016 WL 4735370, at *3 (collecting cases), Cannonier cannot circumvent the plain language and import of his waiver of these rights in order to collaterally attack the sentence that the Court imposed.

Cannonier's waiver of his right to collaterally attack the sentence also forecloses his ineffective assistance of counsel claims. As a general matter, "[c]laims of ineffective assistance of counsel can survive § 2255 waivers, but only when the claim relates to the negotiation and entry of a plea or sentencing agreement." *United States v. Cano*, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (Chin, J.). While Cannonier "dress[es] up" his challenges to Ms. Abate's performance as Sixth Amendment claims, *see Djelevic*, 161 F.3d at 107, each of Cannonier's ineffective assistance arguments are best understood as targeting the sentence that the Court imposed.

The Petition itself makes this clear. In the Petition, Cannonier argued that the *Court* "erred in assessing him 3 criminal history points for a [juvenile] offender sentence" and that the *Court* "erred in not departing under USSG 5K2.13 Diminished Capacity when the Record clearly supports a reduced sentence based on his Mental Illness." Pet. at 3–4. Later in the Petition, Cannonier restates those alleged errors as forming the bases for his ineffective assistance of counsel claims: As already noted, his first ineffective assistance of counsel claim turns on his argument that Ms. Abate failed to argue that his 2011 robbery conviction should not count towards his criminal history under the Sentencing Guidelines, while his second and third claims turn on his argument that Ms. Abate failed to argue for a downward departure due to his attention deficit/hyperactive disorder and that, had counsel sought a mental competency examination under 18 U.S.C. § 4241 prior to sentencing, this would have "helped negate a departure for his history of ADHD under USSG 5K2.13 Diminished Capacity." *See* Pet. at 11.

In effect, the nexus between his ineffective assistance of counsel claims and his arguments challenging his sentence supports the conclusion that his ineffective assistance of

counsel claims are really challenges to the Court's determination of the proper sentence. *See United States v. Brickhouse*, No. 09-CR-1118 (KMK), 2017 WL 1049509, at *6 (S.D.N.Y. Mar. 16, 2017) ( "[T]o the extent that Petitioner quibbles with counsel's advocacy at sentencing, his claim is covered by the waiver in the Plea Agreement."); *United States v. Marte*, 798 F. Supp. 2d 511, 515 (S.D.N.Y. 2011) ("[The petitioner's] claim of ineffective assistance of counsel appears to be a backdoor attempt to attack his sentence."). Allowing Cannonier to refashion his collateral attack as premised on ineffective assistance of counsel would be inconsistent with the Second Circuit's admonition that courts not permit criminal defendants to circumvent appellate and collateral attack waivers. *See Djelevic*, 161 F.3d at 107; *see also United States v. Williams*, 448 F. App'x 156, 157 (2d Cir. 2012) ("Williams' sentence fell within or below the Guidelines ranges specified in the plea agreements, and therefore triggered the appellate waiver provisions of those agreements. His arguments as to the adequacy of his attorney's performance at sentencing are consequently foreclosed.").

Consistent with this reasoning, district courts in this Circuit have noted that appellate waivers preclude the kinds of ineffective assistance of counsel claims that Cannonier raises here. In *Tellado v. United States*, for instance, the district court determined that the petitioner's "argument that his counsel was ineffective for failing to object to his designation as a career offender at sentencing is not viable in light of the waiver in his plea agreement." *Tellado v. United States*, 799 F. Supp. 2d 156, 184 (D. Conn. 2011), *aff'd*, 745 F.3d 48 (2d Cir. 2014). In *Ramirez-Hernandez v. United States*, meanwhile, the district court observed that a similar appeal waiver provision precluded petitioner's argument that counsel was ineffective because they failed to seek a downward departure. *Ramirez-Hernandez v. United States*, No. 09-CV-4107, 2012 WL 1838286, at *4 (E.D.N.Y. May 21, 2012). And in *United States v. Brickhouse*, the

district court determined that the petitioner had, by way of an appeal waiver provision, waived his claim that "counsel erred by not procuring and submitting a mental health evaluation, especially to the extent this claim is meant to target the sentence the Court imposed." *Brickhouse*, 2017 WL 1049509, at *6–*7. As in those cases, Cannonier's knowing and voluntarily waiver of his right to appeal or collaterally attack his sentence precludes an attempt to raise an ineffective assistance claim that targets the sentence Cannonier in fact received.

For the reasons stated above, Cannonier's petition is denied because he waived his right to collaterally attack his sentence when he knowingly and voluntarily entered into the plea agreement and because his ineffective assistance of counsel claims target the sentence imposed and raise no arguments relating to the negotiation and entry of the plea agreement.

**B. Merits**

Even if Cannonier had not knowingly and voluntarily waived his right to collaterally attack his sentence, though, his petition would fail because all three of his ineffective assistance of counsel claims lack merit.

The Sixth Amendment entitles criminal defendants to effective assistance from an attorney at critical stages of their case, including guilty pleas and sentencing. *Gonzales v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). To make an ineffective assistance of counsel claim, "a defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010); *see Strickland v. Washington*, 466 U.S. 668 (1984).

Under the first prong, the Court is "mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts." *Parisi*

9

*v. United States*, 529 F.3d 134, 141 (2d Cir. 2008). As a result, the Court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Court will also consider "the circumstances counsel faced at the time of the relevant conduct and evaluate the conduct from counsel's point of view." *Parisi*, 529 F.3d at 141 (ellipsis omitted). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . and even strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (brackets omitted). "[F]ailure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995). For purposes of the second prong, meanwhile, a *habeas* petitioner bringing a claim in the sentencing context "must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzales v. United States*, 722 F.3d 118, 130 (2d Cir. 2013); *Farmer v. United States*, No. 12-CR-758 (AJN), 2016 WL 1276461, at *3 (S.D.N.Y. Mar. 30, 2016). Cannonier's claims all fail to satisfy either prong of this analysis.

*First*, Cannonier's claim that Abate failed to argue that his 2011 robbery conviction should not count towards his criminal history is belied by the record. Specifically, he asserts that but for Ms. Abate's allegedly deficient performance, "[h]e would not have been assessed 3 criminal history points for a [juvenile] offense at age 15 on August 24, 2011 where he was adjudged a [juvenile] and sent to the Goshen Secure Center." Pet. at 11. Contrary to Cannonier's objections, however, Abate made precisely that argument at numerous points. She submitted written objections to the draft Presentence Report objecting to all of the criminal

history points assigned and specifically to the points Cannonier now raises in his petition. *See* Abate Resp. ¶ 4 & Ex. A. In that letter, Abate also objected to the imposition of any points that were assigned for offenses that Cannonier committed when he was 16 years old. *Id.* ¶ 5 & Ex. A. In her sentencing submission filed on behalf of Cannonier, furthermore, Abate argued extensively that Cannonier should not have been assessed any points for his time as a juvenile offender at Goshen. *See* Abate Resp. ¶ 6 & Ex. B at 10–14. And she again made that argument at sentencing. *See* Dkt. No. 2079, January 18, 2018 Sentencing Tr., at 7:10–10:1. But, as discussed extensively at sentencing, the Court determined that the argument Cannonier rests on was at odds with binding Second Circuit precedent. *See* Dkt. No. 2079, January 18, 2018 Sentencing Tr., at 9:19–10:1; *see also United States v. Jones*, 415 F.3d 256 (2d Cir. 2005); *United States v. Driskell*, 111 F.3d 150 (2d Cir. 2002). The record thus reflects that Abate did not err in her advocacy and that she did not, as Cannonier contends, fail to raise this precise argument—let alone that any deficiency in Abate's performance caused actual prejudice. *See Strickland*, 466 U.S. at 687–88, 693–94.

*Second*, Cannonier's argument that but for Abate's "unprofessional errors," he "would have received a diminished capacity departure under USSG 5K2.13 for his history of ADHD" also fails. *See* Pet. at 11. Among other things, the plea agreement barred Abate from seeking a downward departure for diminished capacity under U.S.S.G. § 5K2.13. *See* Plea Agmt. at 4; *see also* Abate Resp. ¶¶ 14–15. Her decision not to seek a downward departure was therefore not in error but was instead consistent with the terms of the plea agreement to which Cannonier knowingly and voluntarily entered. In any event, Cannonier has failed to establish that his ADHD constituted a diminished capacity that would have contributed substantially to the commission of the offense such that Abate's failure to raise such an argument would have

constituted legal error. *See* U.S.S.G. § 5K2.13; *see also United States v. North*, 7 F. App'x 18, 19–20 (2d Cir. 2001) (affirming the district court's determination that the defendant's attention deficit disorder did not satisfy the § 5K2.13 standard). And even if he *had* made such a showing, he has not shown any actual prejudice because he has not proven that his ADHD "contributed substantially" to the commission of the offense, U.S.S.G. § 5K2.13, such that but for Abate's failure to raise this argument, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88, 693–94. Thus, even if Cannonier had not knowingly and voluntarily waived this argument, it would have still failed.

*Third*, Cannonier's argument that Abate was ineffective in deciding not to seek a mental competency evaluation under 18 U.S.C. § 4241, *see* Pet. at 11–12, also fails to satisfy the two prongs of the *Strickland* analysis. In her affidavit, Abate contends that, at Cannonier's request, she researched the possibility of doing so, but that she ultimately determined that § 4241 evaluations may only be used to determine whether a defendant is competent to proceed in a criminal case. *See* Abate Resp. ¶¶ 8–12. Her determination is consistent with the plain text of the statute. *See* 18 U.S.C. § 4241(a) ("[T]he defendant . . . may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion . . . if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."). Under 18 U.S.C. § 4241(b), the Court *may* "order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court." Abate's conclusion that a § 4241(b) examination may only relate to a defendant's competency to stand trial—rather than for mitigation purposes, as relevant

here—was, at a minimum, reasonable under the circumstances. And in line with this, Cannonier's claim fails the first *Strickland* prong. *See Strickland*, 466 U.S. at 690–91 (attorney's "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable"). Furthermore, Cannonier has failed to make an adequate showing that there was a reasonable probability that had Abate sought an examination, the result of the proceeding would have been different. *Cf. Langston v. United States*, 105 F. Supp. 2d 419, 425 (E.D. Pa. 2000) (finding that "[e]ven if counsel had moved for a competency hearing a reasonable probability does not exist that Langston would have been found incompetent to stand trial.").

In sum, Cannonier fails to show that Abate erred or that her performance "fell below an objective standard of reasonableness" under "prevailing professional norms," let alone that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94 (1984).

### III.  CONCLUSION

Mr. Cannonier's Section 2255 motion is DENIED in its entirety. As Cannonier has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253; *see also Lozada v. United States*, 107 F.3d 1011, 1015–16 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir. 1997). Because the Court concludes that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court concludes that it need not conduct a hearing to resolve the motion. *See* 28 U.S.C. § 2255(b). Moreover, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good

faith, so *in forma pauperis* status is denied. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to close Docket No. 18-CV-8764, to terminate Docket No. 2373 in 15-CR-95, and to mail a copy of this Memorandum Opinion and Order to Mr. Cannonier.

SO ORDERED.

Dated: March 3, 2021
New York, New York

_____
ALISON J. NATHAN
United States District Judge